# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **ERIC DEPAOLA,** | )<br>) |
| Plaintiff, | ) Case No. 7:17CV00028<br>) |
| v. | ) **OPINION**<br>) |
| **HAROLD CLARKE, ET AL.,** | ) By: James P. Jones<br>) United States District Judge |
| Defendants. | ) |

*Eric DePaola, Pro Se Plaintiff.*

The plaintiff, Eric DePaola, an inmate proceeding pro se, filed this prisoner civil rights action under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5. DePaola alleges that more than two dozen prison officials have violated his rights related to outdoor recreation, religious dietary beliefs, or disciplinary proceedings. After review of DePaola's submissions, I conclude that this action must be summarily dismissed.

I.

DePaola is incarcerated at Red Onion State Prison ("Red Onion") in Pound, Virginia, where the alleged violations occurred. Liberally construed, his Complaint alleges four unrelated and improperly joined claims.

Outside Recreation.

DePaola first complains generally about outside recreation procedures and conditions for segregation inmates like himself. He alleges that Virginia Department of Corrections ("VDOC") and Red Onion policies call for officers each morning "to make a verbal announcement that the rec/shower list is being taken & make rounds at each prisoner's cell to take up this list marking accept and/or refuse." Compl. ¶ 34, ECF No. 1. He contends that policy requires approval from a supervisor to change this list.

Routine recreation procedures require the inmate to remove his clothes, place them in the tray box to be searched, perform a visual body cavity search, retrieve his clothes, and redress. Officers then handcuff and shackle the inmate and escort him to a recreation cage. These cages do not include bathrooms, drinking water, or recreation equipment. DePaola alleges that the cages are often contaminated with feces, urine and other substances from previous inmates, birds or insects. Poor drainage and maintenance of the cages often allegedly result in standing water, snow or ice, and inmates allegedly do not always receive weather-appropriate outdoor clothing.

DePaola alleges that defendants Large, Messer, Hall, Dickenson and Sheperd ("the Sergeants") "rarely follow protocol in re to taking the rec list & often engage in tactics to trick, extort &/or den[y] a prisoner's rec (including pl.)."

*Id.* at ¶ 46. He asserts that he "has been extorted &/or denied (unjustifiably) via other means his rec" by the Sergeants "at one point in time or another." *Id.* at ¶ 47.

DePaola also complains that defendants Steavens, Stanley, Fleming, Lovell, Hill, Vaughn, Dodson, and Gentry ("the Guards") "also engage in tactics to trick, extort or otherwise unjustifiably den[y] a prisoner his rec. (incl. pl.)." *Id.* at ¶ 48. He asserts that these Guards "engage in harassment [sic] (sexual &/or other) while conducting the pre rec. strip search &/or during escorting said prisoner to the rec. area (including pl.)." *Id.* at ¶ 49.

Religious Diet.

DePaola states that his Muslim religious beliefs prohibit him from ingesting animal or human waste and from ingesting any animal products that are not prepared in a "halal" manner. *Id.* at ¶ 51. He complains that when the defendants named above fail to clean the recreation cage before placing him in it, he sometimes "ingests" the following items in violation of his religious beliefs: "feces (human & bird), urine, snot, spit, dead & alive insects, spider webs [sic], fungus, mold, etc." *Id.* at ¶¶ 54, 53.

Disciplinary Proceedings.

VDOC policy allows inmates to be fined up to $15 when found guilty of certain disciplinary infractions. Once such a penalty is imposed on an inmate, officials immediately remove that amount from his trust account and place it in the

"General Commisary Trust Account (GCTA) which is used to purchase recreation equipment (inter alia)." *Id.* at ¶ 58. DePaola's current classification status does not allow him to utilize recreation equipment.

On January 15, 2016, defendant Hall charged DePaola for possession of a weapon (a sharpened piece of metal) found by another officer in a cell DePaola had vacated three days earlier. On January 29, the hearing officer, defendant Mullins, denied DePaola's written requests for witness statements and documentation from the investigation when the metal object was discovered. During the hearing, Mullins refused to answer DePaola's questions regarding his impartiality and fitness to hear the charge. Mullins also refused DePaola's request to be cuffed in a manner that allowed him to take notes during the hearing and denied his request for a staff advisor to take notes for use during an appeal. Mullins found DePaola guilty based on Hall's testimony about how the metal object was found and imposed a $15 fine. The fine amount was immediately removed from DePaola's trust account that contained only money received from his friends and family. His disciplinary appeals to defendants Duncan and Barksdale were unsuccessful.

On January 13, 2016, an official charged DePaola for disobeying a direct order. Mullins granted DePaola's requests for written witness statements, and the reporting officer answered many of DePaola's 43 questions in writing. Mullins

gave DePaola these forms on February 27, and waited only "approx. 10-15 minutes" before sending defendant Steavens to bring DePaola to the hearing. *Id.* at ¶ 85. DePaola asked Steavens to allow him more time to review the documents, speak to his staff advisor, and finish eating lunch. Steavens agreed, left DePaola's cell, and started talking to Mullins at the pod table. DePaola's staff advisor was also present. Mullins and the advisor went into an office for a short while and then left the pod. When Steavens later came by DePaola's cell during his rounds, he said he had told Mullins that DePaola had refused to go to the hearing. DePaola later learned that Mullins had conducted the hearing in his absence, found him guilty, and imposed a fine of $8, taken from his trust account funds received from family and friends. DePaola's appeals of the charge and the fine to Duncan and Barksdale were unsuccessful.

Claims, Injuries and Relief Requested.

Liberally construed, DePaola's Complaint alleges that the defendants' actions and policies regarding outside recreation have deprived him of a constitutionally protected liberty interest without due process and subjected him to hazardous conditions, in violation of the Eighth Amendment. The Complaint also alleges that he was denied due process during the challenged disciplinary proceedings.

As a result of these alleged constitutional violations, DePaola alleges that he has suffered the following injuries: "loss of potentially earned physical health" and possible future health issues, present physical and mental deterioration, nausea, "freezing pains in wet &/or winter times," headaches, mental anguish and humiliation, and a loss of possible spiritual growth (related to his second claim). *Id.* at ¶ 96. As relief, he seeks monetary damages and declaratory and injunctive relief to abolish the use of recreation cages; to provide segregation inmates access to drinking water, bathrooms, recreation equipment, and adequate clothing during their outside recreation time in a sanitary area; to expunge the challenged disciplinary infractions, and to stop imposing fines for such infractions.

II.

A. Standard of Review.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). A "frivolous" claim is one that "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989) (interpreting "frivolous" in former version of 28 U.S.C. § 1915(d)). To state a claim and survive dismissal under § 1915A(b)(1), an inmate's complaint must present "enough facts to state a claim to relief that is plausible on its face."

*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).[1] In determining whether the complaint states a claim, a court must view the factual allegations in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

### B. Misjoinder of Claims and Defendants.

The present complaint is not consistent with Rules 18 and 20 of the Federal Rules of Civil Procedure, regarding joinder of claims and parties. Rule 18(a) allows a plaintiff to join either "as independent or alternative claims, as many claims as it has against an opposing party." Rule 20 allows the joinder of several parties only if the claims arose out of the same transaction or occurrence, or series thereof, and contain a question of fact or law common to all the defendants. *See* 6A Charles Alan Wright, et al., *Federal Practice and Procedure* § 1583 (3d ed. 1998) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed). Under these rules, "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." *Green v. Denning*, No. 06-3298-SAC, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009). These procedural rules apply with equal force to pro se prisoner cases. Indeed,

---

[1] I have omitted internal quotation marks, alterations, citations throughout this opinion, unless otherwise noted.

"[r]equiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents 'the sort of morass [a multiple claim, multiple defendant] suit produce[s].'" *Id.*

I cannot allow DePaola's Complaint to proceed as it is presently constituted, because it improperly joins together multiple claims and defendants, regarding unrelated incidents in different time periods, in a manner entirely inconsistent with the rules. Because I conclude, however, that the Complaint also fails to provide the factual or legal basis for any claim of constitutional significance, I will summarily dismiss DePaola's claims on that ground, pursuant to 28 U.S.C. § 1915A(b)(1). I will also decline to exercise supplemental jurisdiction over his state law claims, pursuant to 28 U.S.C. § 1367(c), and dismiss them without prejudice.

### C. No Personal Involvement.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). DePaola fails to meet this pleading standard. He states no facts about any actions or omissions committed by the following administrative or supervisory defendants in violation of his rights: Clarke, Robinson, Gilbert, Kiser, Wallace,

Crabtree, Turner, and Ponton. These officials cannot be held liable under § 1983 merely for being supervisors. *See Vinnedge v. Gibbs*, 550 F .2d 926, 928 (4th Cir. 1977).

At the most, DePaola states that while these defendants may not have directly violated his rights, they allegedly "compounded/contributed to such via Deliberate Indifference" to the actions of others. Compl. 5, ECF No. 1. For supervisory prison officials to be held liable under § 1983 for constitutional injuries inflicted by their subordinates, an inmate must state facts showing that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a "pervasive and unreasonable" risk of constitutional injury; (2) the supervisor's response to this knowledge was so inadequate as to show "deliberate indifference top or tacit authorization" of the offensive practices; and (3) there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). DePaola makes no such factual showing, and cannot use the label "deliberate indifference" to build actionable claims against these defendants. *Ashcroft*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). Moreover, for reasons I will discuss, DePaola has not demonstrated that his constitutional rights were violated or will be violated in the future by the actions

and policies of which he complains. There can be no supervisory liability under § 1983 without a viable constitutional claim at stake.

### D. No Liberty Interest in Outside Recreation.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

DePaola contends that Virginia Code Ann. § 53.1-32 creates a protected liberty interest for inmates to receive outside recreation. This section states that, among other things, "The Director [of the VDOC] shall provide a program of recreation for prisoners." Va. Code Ann. § 53.1-32(C). This provision places all the particular aspects of inmates' recreation, including type, place, and frequency, squarely within the discretion of the Director and his designees. Thus, I cannot find that it creates a protected liberty interest for inmates to receive outside recreation with specific frequency, equipment, or other amenities. Accordingly, I

will dismiss DePaola's due process claim regarding recreation under § 1915A(b)91) as legally frivolous.

To the extent that DePaola faults prison officials for violating prison regulations or other state laws governing prisoner recreation, his claims fail. A state official's violation of state procedural regulations is not a federal due process issue and is not actionable under § 1983. *Riccio v. Cty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990).

### E. No Eighth Amendment Violation.

The Eighth Amendment protects prisoners from cruel and unusual living conditions, but "restrictive and even harsh" conditions that do not inflict harm "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of this standard is met only by conditions that cause "significant physical or emotional harm, or a grave risk of such harm." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

DePaola's complaints about his outside recreation do not present any claim of constitutional proportions under this standard. He does not allege that he is always or with any particular frequency denied outside recreation. At the most, he alleges that the defendants sometimes deny him a scheduled outside recreation period without justification, in his opinion. He makes no showing that he has been deprived of the minimal measure of recreation necessary for life.

DePaola also fails to show that conditions during recreation periods are unconstitutional. The strip search, restraints, and escort procedures are onerous, the temporary lack of access to drinking water and bathroom facilities may cause minor discomfort on occasion, the cages may not always meet desired cleanliness standards, and his clothing may not always protect him as desired from weather conditions. He has not shown, however, that these inconveniences, even combined, have caused or are likely to cause him serious or significant harm or that he ever required medical care for the health concerns he alleges. For the stated reasons, I will summarily dismiss DePaola's Eighth Amendment recreation claims under § 1915A(b)(1) for failure to state a claim.

F.  No Deprivation of Religious Rights.

RLUIPA and the First Amendment prohibit the government from imposing "a substantial burden" on an inmate's ability to exercise his religion unless the government can demonstrate an appropriate reason for the burden. *Lovelace v. Lee*, 472 F.3d 174, 198-99, n.8 (4th Cir. 2006). For either type of claim, "a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 187 (RLUIPA context) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (First Amendment context).

DePaola fails to show that any defendant's action or policy at issue in this lawsuit placed substantial pressure on him to violate his religious dietary rules. At most, he alleges that because officials do not always keep the recreation cages free from foreign substances, he occasionally (and presumably by accident) ingests human or animal waste or insects inconsistent with his halal dietary requirements. These circumstances cannot rise to the level of a substantial burden as required to state any actionable claim under RLUIPA or the First Amendment. Accordingly, I must summarily dismiss DePaola's religious claims as frivolous.

G. No Denial of Due Process.

To state a procedural due process claim, an inmate must show that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir.1997). When a disciplinary penalty does not cause his original sentence to be enhanced, protected interests are generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Unless the inmate proves deprivation of a protected interest, he has no federal right to particular procedural protections.

Fines for prison disciplinary infractions do not involve interests protected by the Constitution. *See Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life); *Henderson v. Virginia*, No. 7:07-CV-266, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (same)). Similarly, I cannot find that the fines imposed on DePaola for the two challenged disciplinary convictions placed any atypical and significant hardship on him in comparison to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. Because DePaola thus did not possess a federally

protected interest in avoiding the imposition of a monetary fine, he was not entitled to federal due process protections before receiving this penalty.[2]

In any event, DePaola has not alleged facts showing that he was deprived of any constitutionally required procedural protections. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In prison disciplinary hearings where the proceedings involve a constitutionally protected interest, such as loss of good time credits, the rights afforded inmates are limited to the following: (1) written notice of the charged violations at least 24 hours before the hearing; (2) disclosure of evidence against the prisoner; (3) the right to call witnesses and present documentary evidence unless unduly hazardous to institutional safety or correctional goals; (4) a neutral and detached factfinder; and (5) a written statement by the factfinder of the evidence relied on and reasons for the disciplinary action. *Id.* at 559-566.

---

[2] To the extent that DePaola seeks to challenge the fines as deprivations of his personal property, his allegations are similarly deficient. A deprivation of property under a state policy offends due process only where the procedural protections afforded by officials are insufficient to ensure that deprivations under that policy are lawful. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). A post-deprivation remedy for mistaken deprivations will suffice where the property interest at stake is adequately protected by such procedures. *Id.* Under VDOC disciplinary policy, DePaola incurred a fine only after receiving pre-deprivation notice and a hearing, and he could and did pursue an appeal of the deprivation. I cannot find that these pre- and post-deprivation procedures provided were insufficient to protect any constitutionally significant property interest at stake here.

When an inmate challenges the sufficiency of the evidence underlying his disciplinary conviction, the requirements of due process are met when the finding of the hearing officer is "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456.

DePaola clearly had timely notice of the January 15, 2016, charge for possession of a weapon and the evidentiary basis for it before the hearing on January 29. He was also allowed to question Hall about the statement on the charging document, and the constitutional standard in *Wolff* does not require the presence of the officer or officers most directly involved in an investigation. DePaola does not state any facts indicating that Mullins failed to act as an impartial fact finder. DePaola had a chance to proffer witnesses and documentation. However, he does not provide factual support suggesting that the requested witness statements and documentation that Mullins did not consider would have provided relevant or material evidence on the subject of DePaola's guilt.

*Wolff* does not recognize any right to note taking or appeals of disciplinary hearings. Even if VDOC policy normally includes these features, violations of VDOC policy does not present a federal due process issue and is not actionable

under § 1983. *Riccio*, 907 F.2d at 1469. Finally, DePaola's own submissions indicate that Mullins had some evidence in the record to support the guilty finding: the disciplinary offense report's statement and Hall's testimony that the sharpened piece of metal had been discovered in DePaola's former cell. This evidence is sufficient under the *Hill* standard for me to reject DePaola's due process challenges.

DePaola's submissions also indicate that he had timely notice of the January 13, 2016, charge for disobeying a direct order and the evidentiary basis for it before Mullins conducted the February 27, 2016, hearing. DePaola also requested and was offered written witness statements and other documents for the hearing and was given an opportunity to present his evidence to Mullins. The record also indicates that DePaola received a written statement of the evidence Mullins relied upon in his absence, namely the offense report statement and DePaola's refusal to attend, which refusal was a fact that Mullins considered as an admission of guilt, in accord with VDOC policy. Thus, DePaola fails to demonstrate that he was denied any of the *Wolff* protections, and I will not reverse an otherwise sufficient disciplinary conviction because DePaola turned down the chance to be heard that Mullins offered him.[3]

---

[3] DePaola's complaint about having insufficient preparation time or no warning of the hearing is without factual basis. As the warden noted in addressing his appeal, if DePaola had attended the hearing when offered that chance, Mullins would likely have

Finally, DePaola has no viable § 1983 claim against the defendants about his disciplinary fines being taken from moneys he received as gifts and placed in the commissary fund. He himself chose to use the VDOC trust account system that includes the potential for his incurring disciplinary fines.

III. Conclusion.

In conclusion, I will summarily dismiss DePaola's Complaint under 28 U.S.C. § 1915A(b)(1). His factual allegations do not state claims actionable under § 1983 or are factually or legally frivolous.

A separate Order will be entered herewith.

DATED: July 13, 2017

/s/ James P. Jones
United States District Judge

---

allowed him additional preparation time, if requested, and consultation with his staff advisor, who was present.