IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **ERIC DePAOLA,** | ) |
| | ) |
| Plaintiff, | ) Case No. 7:17CV00028 |
| | ) |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **HAROLD CLARKE, ET AL.,** | ) By: James P. Jones |
| | ) United States District Judge |
| Defendants. | ) |

*Eric DePaola, Pro Se Plaintiff; Margaret Hoehl O'Shea, Office of the Attorney General, Richmond, Virginia, for Defendants.*

The plaintiff, Eric DePaola, a Virginia inmate proceeding pro se, filed an Amended Complaint under 42 U.S.C. § 1983, alleging violations of his rights related to prison disciplinary proceedings. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted.

I. BACKGROUND.

DePaola is an inmate in the custody of the Virginia Department of Corrections ("VDOC").[1] At the time these claims arose, he was incarcerated at Red Onion State Prison ("Red Onion"). The defendants are Harold Clarke, VDOC Director, A. David Robinson, VDOC Chief of Correctional Operations; Marcus

---

[1] This summary of the evidence is undisputed, unless otherwise noted. It is taken from the verified Complaint and its amendments, the documentation, and audio recording of the disciplinary proceedings submitted in support of the defendants' Motion for Summary Judgment.

Elam, VDOC Western Regional Administrator; Earl Barksdale, former Warden of Red Onion; and Larry Mullins, Institutional Hearings Officer at Red Onion. On January 13, 2016, two officers reported to Sergeant Hall their discovery, during a search of DePaola's assigned cell, C-514, that a six-inch piece of metal was missing from the table inside that cell. DePaola was moved to Cell C-501, and lockdown procedures went into effect.

On January 15, 2016, an officer served DePaola with a copy of a Disciplinary Offense Report ("DOR") charging him with offense code 102, possession of a weapon or sharpened instrument. According to the DOR, written by Hall, two officers searching Cell C-514 earlier that day, looking for the metal shard missing from the table, had found it hidden in "the small crack between the cell bunk and the wall. The metal was approximately six inches long with a sharpened tip and was made to be a weapon. No other offender had been housed in Cell C-514 since January 13, 2016." Mem. Supp. Mot. Summ. J. Ex. 1, Mullins Aff., Enclosure B, ECF No. 29-1.

The DOR advised DePaola of the rights he had under Operating Procedure ("OP") 861.1 in preparing for and appearing at a disciplinary hearing on this charge: the right to an advisor, the right to request witnesses and documentary evidence, the right to 24-hour notice prior to the hearing, the rights to be present

and to question witnesses, the right to enter into a penalty offer, and the right to remain silent. DePaola signed the DOR, indicating that he had been so advised.

Institutional Hearings Officer ("IHO") Mullins conducted the disciplinary hearing on DePaola's offense code 102 charge on January 29, 2016. DePaola was present with his staff advisor, Counselor Stewart. DePaola pleaded not guilty. He asked Mullins to have his hands cuffed differently so that he could take notes during the hearing to aid in preparing an appeal. Mullins denied the request for different cuffing as unnecessary and denied DePaola's request to allow his staff advisor to take notes on his behalf.

Mullins next reviewed DePaola's requests for witness statements and documentary evidence and denied these requests. DePaola had filed two witness forms, requesting written statements from inmates Jason Jordan and Bryan Collins. DePaola believed Jordan, assigned to cell C-520, would testify that he saw numerous people, including other inmates, enter and exit DePaola's prior cell, C-514, during the two days after DePaola was moved to C-501. DePaola believed Collins, assigned to cell C-513, would testify that while living next door to DePaola for nearly a year, Collins had "never heard [him] cutting, scraping, scratching &/or sharpening any metal &/or otherwise any weapon period." *Id*. at Enclosure D, ECF No. 29-1. Mullins found that neither of these witnesses could have seen inside DePaola's cell or observed what was done there, by DePaola

himself or by staff or others who entered the cell during the search process. Mullins also noted that DePaola could have waited to work at weapon making until Collins left his cell for a shower or medical appointment.

DePaola submitted one Documentary Evidence Form, asking for several items: maintenance logs, cell inspection charts, and work orders for cell C-514; pictures of the weapon and the cell table; incident reports about the damage to the cell table; copies of the current and prior OP 861.1 and other procedures; and surveillance video footage of C-5 pod between January 13 and 15, 2016. Mullins denied the request for maintenance logs, because such items are restricted for staff members. He did not address DePaola's other requests for evidence, stating that the inmate should have used a separate form to request each item of documentation. DePaola pointed out that the form gave no such direction. Mullins then denied his individual requests for different reasons, finding that the procedures were either available through the prison law library or were restricted for staff use only; and the video footage, photographs, work orders, and logs were either not documentary evidence or were restricted for staff use.[2]

---

[2] The limited uses of Documentary Evidence Form are stated in its introductory paragraph: "Only written documentary evidence can be requested using this form. Note: **This form shall not be used to obtain information outside of the institution, to obtain information restricted for security reasons, to request physical evidence, or otherwise restricted by policy**." Mullins Aff., Enclosure E, ECF No. 29-1.

Mullins asked Hall as the reporting officer to make his statement about what had happened, which closely followed the DOR account. Hall's officers found on January 13, 2016, that a metal piece was missing from the table in cell C-514, where DePaola had been housed for many months. When they could not immediately find the missing piece, they removed DePaola from that cell for security reasons and continued the search.

DePaola asked Mullins if he could be impartial. Mullins replied that he met the VDOC qualifications for an IHO and had performed this function as an impartial decision maker for years. Mullins refused to entertain any other questions on his impartiality.[3]

DePaola then had an opportunity to question Hall. He asked whether inmate housemen had been inside cell C-514 to clean after he had been moved out of it. Hall said no, because the unit was on lockdown until after the weapon was found. Hall explained that during a lockdown, housemen only work in the C pod showers, and they are locked in the showers while cleaning. Hall admitted that he did not

---

[3] DePaola's Second Amended Complaint alleges that before the hearing, Mullins told DePaola, "You should've taken the plea offer." Second Am. Compl. 7, ECF No. 18. When DePaola insisted that he was innocent, Mullins allegedly replied, "Its [sic] your word verses my officers [sic] word, who do you think I'm going to believe." Id. DePaola retorted, "It wouldn't have been his word versus mine if you would've allowed me my requested witness statements & requested evidence," and Mullins allegedly said, "I know, its [sic] funny how that works ain't it?" Id. After the hearing, when DePaola said he intended to appeal Mullins' findings, Mullins allegedly stated, "Go ahead. You'll be guilty of the next charge too." Id.

work nightshift on January 13, 14, or 15, 2016, but he stated that the same lockdown procedures applied during the nightshift. Hall stated that two of his officers, working together, found the weapon hidden between a bunk and the wall and immediately notified Hall. He then examined the weapon, which he described as extremely sharp with no handle.

DePaola made a statement in his defense. He denied that any piece of metal was missing from his cell table. He claimed that after he was moved to another cell on another floor, many officers and inmate housemen had entered his prior cell during the next two days. He also denied any knowledge of the weapon found in cell C-514 on January 15, 2016.

Mullins then reviewed the evidence and made his findings, as follows. A weapon was found. One element of possession of a weapon is finding it within an inmate's area of control. After DePaola had been housed in cell C-514 for nearly a year, officers discovered on January 13, 2016, that a strip of metal was missing from the table in that cell and transferred DePaola to another cell. No other person who entered the cell during the next two days could have removed that strip of metal, because it was already gone. On January 15, 2016, two officers searching the cell together found a strip of sharpened metal, hidden between a bunk and the wall, that matched the missing part of the table. Mullins did not find persuasive

any of DePaola's arguments that others had had an opportunity to make and hide that weapon.

On these findings, Mullins found DePaola guilty of the charge and imposed a $12.00 fine. DePaola appealed Mullins' rulings to Warden Barksdale and then to Regional Administrator Elam, both of whom upheld the finding of guilt.[4]

Liberally construing DePaola's § 1983 Complaint, he claims that Mullins violated due process by: (1) denying exculpatory and other relevant documentary evidence DePaola requested; (2) denying the exculpatory witness statements DePaola requested and allowing Hall to write a disciplinary charge based on an incident that he had not personally witnessed; (3) displaying "bias/prejudice toward [DePaola] in re. to the hearing" and refusing questions on that issue; (4) denying DePaola the opportunity to prepare for his appeal; and (5) "[i]mposing a forfeiture of funds from [DePaola's] commissary account, w/o sufficient due process, &/or ipso facto." Am. Compl. 3, ECF No. 18. DePaola specifically complains that because segregation inmates, like him, rarely have prison employment, disciplinary fines come from money that friends and family have provided. Moreover, segregation inmates have no access to many items purchased

---

[4] Barksdale noted in his appeal response that review of the surveillance camera footage reflected that one inmate houseman who appeared to be sweeping and mopping the floor moved in and out of cell D-514 for less than two minutes on January 13, 2016. For part of that time, an officer was standing beside the cell door. Barksdale stated: "The Houseman was certainly not in the cell long enough to cut a weapon out of the cell table." Mullins Aff., Enclosure F, ECF No. 29-1.

with fine monies, such as outdoor recreation equipment, magazines or newspapers for the general population inmates. DePaola contends that the policy allowing such forfeitures is unconstitutional.

The defendants filed a Motion for Summary Judgment and a motion to stay discovery, pending disposition of their argument for qualified immunity. By Order entered July 30, 2018, I denied their motion to stay discovery and directed them to respond to DePaola's discovery requests within thirty days, and gave DePaola sixty days thereafter to respond to their arguments on summary judgment. DePaola has chosen not to respond to the defendants' motion. However, the time granted for his response has long since passed, and he has never moved for an extension of time to file such a response.[5]

---

[5] DePaola has expressed dissatisfaction with many of the defendants' objections and/or responses to his discovery requests and previously moved to compel additional responses. The magistrate judge denied his motion, finding that the defendants had answered the particular discovery requests or had raised valid objections to doing so. DePaola has filed a "Declaration Pursuant to Rule 56(d) of the Fed. R. Civ. P" and an "Objection," ECF Nos. 47 and 49-2, which I construe as an appeal from the magistrate judge's order. I have reviewed the record and find no basis to alter those rulings. I also cannot find that the additional discovery DePaola requested was necessary to his response on the issues before me on summary judgment, despite his conclusory assertions to the contrary. *See* Fed. R. Civ. P. 56(d) (requiring party to show that it "cannot present facts essential to justify its opposition" to a pending summary judgment motion to warrant continued discovery proceedings and deferral of consideration of the motion). Therefore, I will affirm the magistrate judge's order denying the motion to compel and address the defendants' dispositive motion on the record before me.

II. Discussion.

A. Summary Judgment Standard of Review.

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only [material] disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial and resolving all factual doubts in favor of the non-moving party, would lead a reasonable juror to but one conclusion.[6] Id. at 247-52. I must consider DePaola's verified Complaint, based on his personal knowledge, as an affidavit that may, standing alone, defeat the defendants' summary judgment motion. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).[7]

---

[6] I have previously rejected the defendants' argument that DePaola's § 1983 claims about his disciplinary proceedings are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "a state prisoner's § 1983 action is barred . . . *if* success in that action would necessarily demonstrate the invalidity of [that prisoner's] confinement or its duration," unless the prisoner proves that the challenged criminal or disciplinary conviction has been terminated in his favor. *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). The favorable termination requirement in *Heck* does not apply, however, to disciplinary conviction challenges involving merely a monetary penalty, rather than a loss of earned good conduct time. *See, e.g., Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam) (finding that *Heck*'s favorable termination requirement does not apply where success in § 1983 action "threatens no consequence for [the inmate's disciplinary] conviction or the duration of [inmate's] sentence").

B. Disciplinary Hearing Due Process.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). For purposes of this Opinion, I will assume without deciding that the disciplinary proceedings at issue subjected DePaola to the loss of a protected interest,[8] and that he was, thus, constitutionally entitled to due process.

---

[7] I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

[8] When a disciplinary penalty does *not* affect the length of an inmate's term of confinement, his constitutionally protected interests are generally limited to freedom from restraint that imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest). Unless the inmate proves deprivation of a protected interest, he has *no* federal right to a particular measure of procedural protections.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). If such a disciplinary proceeding subjects the inmate to loss of a constitutionally protected interest, such as earned good conduct time, or perhaps a portion of property,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67).

---

Courts have held that a small monetary fine as a penalty for a prison disciplinary infraction does not involve interests protected by the Constitution. *See Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life); *Henderson v. Virginia*, No. 7:07-CV-00266, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (same). DePaola and his family and friends voluntarily placed monies into his inmate trust account, fully notified by VDOC policies that some of those monies may be removed to pay disciplinary fines. Thus, I cannot find that the fine imposed on DePaola for the disciplinary conviction in this case placed any atypical and significant hardship on him in comparison to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484. As a result, he did not possess a federally protected interest in avoiding the imposition of a monetary fine, and he was not entitled to federal due process protections before receiving this penalty.

In addition, because DePaola had adequate post-deprivation remedies under state tort law, he has no constitutional claim regarding the fine as a property loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Nevertheless, I will not dismiss his case on the basis that he had no protected liberty interest at stake when he was fined for the disciplinary conviction. Rather, I will address his due process claims on the merits.

*Wolff* "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." *Id.* at 454. "The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action." *Id.* A deprivation of an inmate's constitutionally protected interest "does not comport with "the minimum requirements of procedural due process . . . unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* In other words, "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. Determining "whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

    1. Witnesses and Documentary Evidence.

DePaola first complains that Mullins, as the hearing officer, did not allow his requested witnesses, documentation, and video footage. It is well established that "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits. . . . [by] refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff*, 418 U.S. at 566. The Supreme Court expressly "stop[ped] short of imposing a more demanding rule with respect to witnesses and documents." *Id.* at 567.

Mullins, in his discretion as factfinder, ruled that DePaola's requested witnesses were not material to the determination of his guilt or innocence and that his requested documentation and video was otherwise available to DePaola or was restricted for staff use only. Mullins' theory of the case focused on who controlled cell D-514 when the shard of metal went missing from the table, and that person was DePaola. He also had the most obvious opportunity to form the metal strip into a weapon and secret it in the cell. DePaola's next door neighbor and requested witness, inmate Collins, was *not* always inside his cell to overhear DePaola's actions, and could not see what DePaola was doing in his cell. Thus, I cannot find Mullins' exclusion of this witness's testimony to be violative of due process. *See, e.g., Brown v. Braxton*, 373 F.3d 501, 505 (4th Cir. 2004) ("hearing officers . . . may decide that legitimate penological interests justify the denial of an individual inmate's witness request, and their decisions are not to be lightly second-guessed by courts far removed from the demands of prison administration").

Similarly, a parade of documentation, surveillance camera video,[9] and inmate testimony reflecting merely that many officers and even other inmates entered cell D-514 between January 13 and 15, 2016, would not have proven

---

[9] A disciplinary hearing officer's decision not to review surveillance video himself does not constitute a due process violation. *Neal v. Casterline*, 129 F. App'x 113, 115 (5th Cir. 2005) (unpublished). Moreover, while reviewing DePaola's disciplinary appeal, the warden found that the requested video footage verified that it did not reveal other suspects who could have made and hidden the weapon nor did it otherwise exonerate DePaola. Mullins Aff., Enclosure F, ECF No. 29-1.

DePaola innocent of making and hiding the weapon. None of these people was in control of that cell *before* the metal shard that later became that weapon was discovered missing on January 13, 2016. For these reasons, I cannot find that Mullins violated due process under *Wolff* by refusing to consider DePaola's proposed witness testimony and documentation.

I also conclude that allowing Hall to testify about events he had not personally witnessed did not deprive DePaola of any procedural protection under *Wolff*. The DOR listed the names of the officers who performed the searches, found the metal missing from the table, and found the hidden weapon. If DePaola wanted to hear their accounts, he could have requested witness statements from them. As the supervisory officer, Hall had sufficient knowledge about his subordinates' actions and the overall investigation to present the evidence to Mullins in support of the charge. *Wolff* did not recognize a constitutional due process requirement for prison officials to support a disciplinary charge with eyewitness testimony about the inmate's charged misconduct.

2. Impartial Factfinder.

DePaola next claims that before the hearing began, Mullins displayed bias against him. Specifically, Mullins allegedly said, "You should have taken the plea offer." When DePaola claimed innocence, Mullins allegedly replied, "Its [sic] your word verses my officers [sic] word, who do you think I'm going to believe?"

Second Am. Compl. 7, ECF No. 18. During the hearing, Mullins refused to answer questions about his impartiality. Mullins responded to DePaola's claim that he was biased by stating: "DePaola's due process rights were observed during the processing of this charge and during the disciplinary hearing." Mullins Aff. ¶ 13, ECF No. 29-1. I agree.

An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. Prison hearing officers are not held to the same standard of neutrality as judges in criminal proceedings, however. *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). I must presume that the IHO performed with honesty and integrity, and as such, for me to find him less than impartial, "there must be some substantial countervailing reason to conclude that [he was] actually biased with respect to factual issues being adjudicated." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004)); *see Wolff*, 418 U.S. at 592 (Marshall, J., concurring) ("Due process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or had any other form of personal involvement in the case.").

A presumption of Mullins' impartiality is supported by the evidence of his special appointment and regular training for the position. He was not present for the searches of DePaola's cell and did not participate in the investigation or the placement of the disciplinary charge against him. Mullins' alleged, general

comments before the hearing opened do not indicate that he had already heard specific evidence or decided the case against DePaola. On the contrary, throughout the hearing, Mullins ensured that DePaola had received due process — proper and timely notice, an opportunity to speak with his advisor, request witness statements, and documentation. Without more, Mullins' ultimate decision to believe the officers' testimony instead of believing DePaola's uncorroborated denial of any involvement with the weapon, does not prove the hearing officer's partiality or bias. *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996).

On the contrary, judging the credibility of participants is a critical part of a hearing officer's job, and federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. *Hill*, 472 U.S. at 456. Mullins' findings at the close of the disciplinary hearing gave specific, logical reasons for his finding that DePaola was guilty of removing the metal piece, forming it into a weapon, and possessing it inside his cell. I find no disputed fact on which DePaola could show that he lacked an impartial decision maker for his disciplinary hearing or any respect in which Mullins rendered an arbitrary ruling on the evidence.

3. Disciplinary Appeal.

DePaola complains that his inability to take notes, personally or through his advisor, interfered with his right to pursue a disciplinary appeal. This claim has no constitutional significance. *Wolff* did not mandate that prison officials provide inmates with an appeal of disciplinary hearing findings. *Brown*, 938 F. Supp. at 345. Indeed, the Nebraska prison procedures that the court reviewed in *Wolff* did not include an appeal, but the Court did not find this omission to violate due process. 418 U.S. at 571. Thus, any alleged violations of disciplinary appeal rights, at most, charge a violation of state law that is not actionable under § 1983. *Riccio v. Cty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

4. Disciplinary Fines.

To the extent that DePaola seeks to challenge the fines as deprivations of his personal property, his allegations are similarly deficient. A deprivation of property under a state policy offends due process only where the procedural protections afforded by officials are insufficient to ensure that deprivations under that policy are lawful. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). A post-deprivation remedy for mistaken deprivations will suffice where the property interest at stake is adequately protected by such procedures. *Id.* Under the VDOC disciplinary

policy, DePaola incurred a fine only after receiving pre-deprivation notice and a hearing, and he could and did pursue an appeal of the deprivation. I cannot find that these pre- and post-deprivation procedures provided were insufficient to protect any constitutionally significant property interest at stake here.

Finally, DePaola has no viable § 1983 claim against the defendants about his disciplinary fines being taken from monies he had received as gifts. He himself chose to use the VDOC trust account system that includes the potential for his incurring disciplinary fines that would be used to purchase items unavailable to him as a segregation inmate.

For the stated reasons, I find no disputed fact on which DePaola could establish a violation of his constitutional rights, and I conclude that the defendants are entitled to judgment as a matter of law as to all of DePaola's § 1983 claims. Accordingly, I decline to exercise supplemental jurisdiction over any possible state law claims he may be seeking to pursue and will dismiss any such claims without prejudice. *See* 28 U.S.C. § 1367(c).

III. CONCLUSION.

For the reasons stated, it is **ORDERED** as follows:

1.   The plaintiff's objections, ECF No. 49, are OVERRULED, and the magistrate judge's Order, ECF No. 46, is AFFIRMED;

2. The Defendants' Motion for Summary Judgment (ECF No. 28) is GRANTED as to all claims under 42 U.S.C. § 1983; and

3. Any state law claims are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c).

A separate Judgment will be entered herewith.

                                      ENTER: March 26, 2019

                                      /s/ James P. Jones
                                      United States District Judge